IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MILDRED LEE HEREFORD COOKS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:10-cv-02714-TWT-RGV |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

## <u>ORDER FOR SERVICE OF FINAL REPORT AND RECOMMENDATION</u>

Attached is the Final Report and Recommendation of the United States

Magistrate Judge made in this action in accordance with 28 U.S.C. § 636(b)(1),

Federal Rule of Civil Procedure 72(b), and this Court's Local Rule 72.1. Let the same

be filed and a copy, together with a copy of this Order, be served upon counsel for

the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any,

to the Report and Recommendation within fourteen (14) days of the receipt of this

Order. Should objections be filed, they shall specify with particularity the alleged

error or errors made (including reference by page number to the transcript if

applicable) and shall be served upon the opposing party. The party filing objections

will be responsible for obtaining and filing the transcript of any evidentiary hearing

for review by the district court. If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983) (per curiam).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the district court after expiration of the above time period.

**IT IS SO ORDERED**, this 24th day of January, 2012.



RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MILDRED LEE HEREFORD COOKS,   :
  :
     Plaintiff,   :
  :      CIVIL ACTION NO.
     v.   :      1:10-cv-02714-TWT-RGV
  :
MICHAEL J. ASTRUE,   :
COMMISSIONER OF SOCIAL   :
SECURITY,   :
  :
     Defendant.   :

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

This is an action to review the determination by the Commissioner of Social Security ("the Commissioner") that claimant, Mildred Lee Hereford Cooks ("claimant"), proceeding *pro se*, is not entitled to a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II and Title XVI, respectively, of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383f.  For the reasons set forth herein, it is **RECOMMENDED** that the Commissioner's decision denying DIB and SSI be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Claimant initially filed applications for DIB and SSI on September 10, 2007, alleging disability commencing on August 27, 2005, due to hypertension, diabetes

mellitus, morbid obesity, and vertigo. (Tr.[1] at 71-79, 91-92, 96, 136). Claimant's applications were denied initially and on reconsideration. (Tr. at 34-41, 44-51). Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 12, 2008. (Tr. at 20-33, 52-53). On December 18, 2009, the ALJ, Frederick McGrath, issued a decision denying claimant's applications on the grounds that she had not been under a "disability" as defined by the Act from August 27, 2005, through the date of his decision. (Tr. at 6-15). Claimant sought review by the Appeals Council, and on June 24, 2010, the Appeals Council denied claimant's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. at 1-5).

Claimant appealed the decision to the district court on August 30, 2010, seeking review of the Commissioner's decision. [Docs. 2 & 4]. The matter is now before the Court upon the administrative record and the parties' briefs and is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. ISSUES

Claimant has raised the following issues in this case:

---

[1] See Document 12 and its attachments for the electronic Certified Administrative Record ("eCAR"), hereinafter referred to as ("Tr. at __"). With the exception of the eCAR, which is cited according to the actual transcript page number shown on the bottom of the record, the cited document and page numbers in this Report and Recommendation refer to the document and page numbers shown on the Adobe file reader linked to this Court's electronic filing database (CM/ECF).

1.      Whether substantial evidence supports the ALJ's finding that claimant
        could perform her past relevant work as a payroll clerk;

        a.      Whether the ALJ properly considered the combined effect of all
                of claimant's impairments in evaluating her residual functional
                capacity ("RFC");

        b.      Whether the ALJ failed to consider the side effects of claimant's
                medications;

2.      Whether substantial evidence supports the ALJ's credibility findings;
        and

3.      Whether remand is warranted under sentence six of 42 U.S.C. § 405(g)
        based on new evidence provided by the claimant.

[Doc. 15].

## III.  STATEMENT OF FACTS

### A.   Claimant's History

Claimant was born on September 14, 1974, and she was 35 years old at the
time of the ALJ's decision.  (Tr. at 71, 91, 131).  Claimant completed the twelfth
grade, obtained an associate's degree in business management, and has past relevant
work experience as an assistant grocery store manager, a jail corrections officer, a
loan officer, a restaurant manager, and a payroll clerk.  (Tr. at 27, 97, 101, 103).

**B.** **Medical Evidence**

**1.** *Medical Evidence before the ALJ and the Appeals Council*

The record reflects that claimant primarily sought treatment for her hypertension and diabetes. Specifically, on February 24, 2006, claimant was seen at the Diabetes Clinical Services, PSC ("DCS"), for an initial evaluation for treatment and management of her type 2 diabetes mellitus. (Tr. at 175-82). During this evaluation, claimant reported that she was enrolled in school for business management, that her usual activities and hobbies included participating in her church choir and being a hairdresser; that she walked daily for 50 minutes; that she handled stress well and that she felt that she was coping well with her life; that she lived with and cared for her three minor children, her domestic partner, and her partner's minor child; and that she performed household chores such as cooking and cleaning the house. (Tr. at 175-76, 178). Claimant described herself as a "people person," fun loving, and outgoing, and described her strength as being a problem solver. (Tr. at 179).

On physical examination, claimant was noted as being clean and well groomed, having an animated affect, and being oriented in three spheres. (Tr. at 180-81). The initial diagnoses were type 2 diabetes mellitus, hypertension, and hyperglycemia, all of which were uncontrolled; edema in her legs; urinary

frequency; fatigue; weight gain; morbid obesity; and knowledge deficiency regarding the management of her diabetes. (Tr. at 181-82). At this time, claimant was placed on a medicinal regimen and nutrition plan for weight loss and management of her blood pressure and lipid levels. (Id.).

On March 20, 2006, claimant returned to DCS for a follow-up evaluation of her diabetes and hypertension. (Tr. at 171-72). At this time, claimant's blood pressure was noted as 180/120 and her weight was 338 pounds, and she reported experiencing episodes of syncope, vertigo, and numbness and pain. (Tr. at 171). Claimant was assessed with poorly controlled diabetes, uncontrolled hypertension, edema in her legs, fatigue, and morbid obesity. (Id.). Claimant's diabetic medicinal regimen was changed, and she was given instructions on her nutrition plan. (Tr. at 171-72). Claimant returned for a follow-up appointment at DCS on April 28, 2006, at which time her blood pressure was 146/100 and her weight was 334.5 pounds. (Tr. at 168-69). During this visit, it was noted that claimant was pleasant, cooperative, and that she had a good attitude. (Tr. at 168). She was again assessed with poorly controlled diabetes mellitus, but her hypertension was noted as improving and her morbid obesity as decreasing. (Id.). Claimant's diabetic medicinal regimen was adjusted, and she was instructed to return in two weeks for a follow-up evaluation. (Tr. at 169).

Claimant's last visit to DCS was on May 25, 2006, at which time her blood pressure was 118/60 and her weight was approximately 340 pounds. (Tr. at 165-66). Claimant complained of experiencing episodes of syncope, vertigo, and numbness and pain, and she was assessed with type 2 diabetes mellitus that was improving, controlled hypertension, decreased edema in her legs, increased morbid obesity, and neuropathy. (Tr. at 165). Claimant's diabetic medicinal regimen was changed, and the emotional aspects as well as the different causes of diabetes, among other things, were discussed. (Tr. at 165-66).

On June 30, 2006, claimant visited the Park Duvalle Community Health Center ("Park Duvalle"), in order to obtain a refill of her medications. (Tr. at 189). At this time, claimant's diabetes and hypertension were not under control, her medicinal regimen was adjusted, and she was instructed to diet, exercise, and to follow up in four weeks. (Id.). Claimant, however, did not return to Park Duvalle until February 28, 2007, at which time her blood pressure was 108/90 and her weight was 343 pounds. (Tr. at 188). During this appointment, claimant reported that she had no major complaints, but that she was out of her medications. (Id.). Claimant's medications were refilled and she was instructed to return in about three months. (Id.). Thereafter, claimant returned to Park Duvalle on May 30, 2007, for a refill of

her medications and she was again instructed to return within three months. (Tr. at 185).

On September 16, 2007, claimant sought treatment at the Southern Regional Health System ("Southern Regional") for pain in her left great toe. (Tr. at 209-12). Upon examination, claimant's psychiatric status was appropriate and an x-ray of her left foot was normal. (Tr. at 209-10).[2] Claimant returned to Southern Regional on January 1, 2008, seeking medications and treatment for lumbosacral back pain and right knee pain, which she reported as mild to moderate. (Tr. at 205-08). At this time, claimant denied any associated signs or symptoms such as depression, and she was prescribed medication and referred to an orthopedic surgeon. (Tr. at 206-07). On January 9, 2008, an x-ray of claimant's lumbar spine showed normal alignment,

---

[2] On October 26, 2007, Shavonda White ("White"), claimant's sister, completed a Third-Party Adult Function Report in which she explained that claimant takes care of her children, cooks, and cleans, but that she had to perform her daily activities in intervals due to swelling and the side effects of her medications, including dizziness. (Tr. at 123-30). White also explained that claimant could not stand or sit for long periods of time due to chronic diarrhea, swelling, and headaches. (Tr. at 124). White marked that claimant had no problems with her personal care, did not need any special reminders to take care of her personal needs, and did not need help or reminders to take her medications. (Tr. at 124-25). She also reported that claimant goes outside daily and that she can walk, drive a car, and ride in a car, though she often required someone to accompany her due to her dizziness and headaches. (Tr. at 126). She further reported that claimant regularly attends church and grocery shops. (Tr. at 127). White opined that claimant's alleged conditions, including dizziness, swelling, and diarrhea affected her ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, and complete tasks. (Tr. at 128).

vertebral bodies, disk spaces, pedicles, transverse processes, and bony density.  (Tr. at 238).[3]

On February 9, 2008, claimant returned to Southern Regional, complaining of dizziness and lightheadedness, but she denied any other associated signs and symptoms such as depression, anxiety, or vertigo.  (Tr. at 196, 198-204).  A CT scan of claimant's head was within normal limits.  (Tr. at 196, 200).  Claimant was prescribed Antivert and was released the same day.  (Tr. at 196).

On June 5, 2008, claimant completed a Third-Party Adult Function Report in which she explained that she had good days and bad days and that on a good day, she assists her children in their daily routines, cleans the house, prepares full course meals, does the laundry, vacuums, and washes dishes.  (Tr. at 141-48).  Claimant reported that she could not stand or sit for long periods of time due to swelling in her feet and that she has trouble bending or stooping.  (Tr. at 143).  She reported that she only goes outside one to two times per week, that she only shops once a month, and that she regularly attends church.  (Tr. at 144-45).  Claimant further reported that her alleged physical impairments affect her ability to lift, squat, bend, stand,

---

[3] On January 31, 2008, John Hassinger, M.D., a disability determination services ("DDS") non-examining medical consultant with a specialty in internal medicine, reviewed claimant's medical records and found that there was insufficient medical information to assess the claim since there was little clinical information and claimant had failed to appear for her consultative examination.  (Tr. at 191).

walk, sit, kneel, climb stairs, and complete tasks, and that she could only walk for about five minutes before needing to rest for five to ten minutes.  (Tr. at 146). Finally, claimant reported:

> My disability affects my body and the physical aspects of my life.  It doesn't effect my mind.  I am suffering from diabetes, hypertension, morbid obesity, vertigo, and I take medicines for all of these illnesses. The medicines make me suffer just as much, if not more, than the illnesses itself [sic].

(Tr. at 148).

On June 10, 2008, Linda O'Neil, Ph.D. ("Dr. O'Neil"), a DDS non-examining psychological consultant, evaluated the claimant using a Psychiatric Review Technique ("PRT") form and found that claimant had no medically determinable mental impairment.  (Tr. at 213-26).  Specifically, Dr. O'Neil noted that claimant had alleged that she suffered from hypertension, diabetes mellitus, and morbid obesity, but that she had not made any mental allegations on her initial claim.  (Tr. at 225). Rather, Dr. O'Neil noted that there was a vague reference to a mental condition, but that the medical evidence showed "no findings or mention of any mental issues." (Id.).  Dr. O'Neil also reviewed claimant's reports of her activities of daily living and noted that they were likewise focused on her alleged physical impairments.  (Id.). In particular, Dr. O'Neil noted that claimant had remarked in her June 5, 2008, report that her disability affects her body and the physical aspects of her life and not

her mind.  (Id.).  Based on her review of the medical evidence, Dr. O'Neil opined that claimant's activities of daily living were fully credible and that she had no medically determinable mental impairment.  (Id.).

On June 19, 2008, Louise Wunsch, M.D. ("Dr. Wunsch"), another DDS non-examining medical consultant, completed a Physical Residual Functional Capacity ("PRFC") assessment of claimant's physical abilities.  (Tr. at 227-34).  Dr. Wunsch's primary diagnoses were obesity, hypertension, and diabetes mellitus.  (Tr. at 227).  Dr. Wunsch opined that claimant could sit, stand, and walk for about 6 hours in an 8-hour workday.  (Tr. at 228).  She also opined that claimant could lift or carry 50 pounds occasionally, 25 pounds frequently, and had no limitations for pushing or pulling.  (Id.).  Dr. Wunsch also opined that claimant had no postural, manipulative, visual, communicative, or environmental limitations.  (Tr. at 229-31).  Finally, Dr. Wunsch found that claimant was partially credible based on the medical evidence regarding her hypertension, diabetes mellitus, and morbid obesity.  (Tr. at 232, 234).[4]

On June 27, 2008, an x-ray of claimant's right knee showed mild osteopenia and mild degenerative changes, but no joint effusion or acute fracture.  (Tr. at 237).

---

[4] On June 19, 2008, Earnest Phillips ("Phillips"), completed a Vocational Analysis in which he rated claimant as being capable of performing medium exertional work with no mental limitations.  (Tr. at 149).  Phillips also opined that claimant could perform her past work as a payroll clerk both as she performed it and as it is described in the *Dictionary of Occupational Titles*.  (Tr. at 150-51).

Thereafter, on August 20, 2008, claimant saw Ronald Watts, M.D., F.A.C.E., with Eagle's Landing Diabetes & Endocrinology, for evaluation of her diabetes. (Tr. at 241-44). During this appointment, claimant complained of fatigue, headaches, increased glucose, muscle aches, and blurred vision, and her blood pressure was noted as 140/90 and her weight was 332 pounds. (Tr. at 242). Claimant reported that she had been compliant with a healthy diet and that she exercised five times per week. (Id.). She denied having any hypoglycemic episodes. Upon physical examination, it was noted that claimant appeared alert; was oriented to time, place, and person; was in no apparent distress; was severely obese; had a normal and appropriate mood and affect; and had no edema in her legs. (Tr. at 242-43). Claimant was assessed with uncontrolled type 2 diabetes mellitus and hypertension, her medicinal regimen was changed, and it was recommended that she begin antiplatelet therapy with aspirin for prevention of cardiovascular disease. (Tr. at 243). Claimant was also administered literature regarding her diabetes diagnosis and she was counseled on diet compliance, exercise, and weight management. (Id.).

On September 25, 2008, claimant saw G. Natarajan, M.D. ("Dr. Natarajan"), an orthopedic surgeon, for an evaluation of her right knee based on the referral from Southern Regional. (Tr. at 239-40). Upon physical examination of her right knee, Dr. Natarajan noted that there was "[n]o specific tenderness over the medial or lateral

joint line, no effusion. Patella tracking is normal. The knee is stable." (Tr. at 239).

Dr. Natarajan diagnosed claimant as suffering from an acute gastrosoleus strain of

her right leg, and recommended that she take a few days off from work, keep her leg

elevated, take warm bathes, wear a soft shoe, and then return to work for six hours

a day for one week before resuming her normal schedule. (Id.).

## 2.    *New Medical Evidence submitted to the Court*

On March 5, 2010, claimant sought treatment from the Families United

Services, Inc. ("FUS"), for her depression. [Doc. 7 at 4-8; Doc. 7-1 at 1-8; Doc. 7-2 at

1-2].[5] During this initial assessment, claimant reported that she had been

experiencing "feelings of sadness, and worthlessness," that she cried daily, was

withdrawn, isolated herself, and that she had attempted suicide in August of 2009

by taking pills but that her friend made her vomit. [Doc. 7 at 4-5].[6] Claimant also

---

[5] It appears that claimant failed to submit the medical record from this visit to the Appeals Council prior to its June 24, 2010, decision denying claimant's request for review despite having had an opportunity to do so and being specifically advised that she had the right to submit additional evidence. See (Tr. at 5). Nevertheless, since plaintiff is proceeding *pro se* and this medical assessment was not part of the medical records before the Appeals Council, this Court will consider whether this assessment, as new evidence, warrants remand under sentence six of 42 U.S.C. § 405(g). See Campbell v. Astrue, Civil Action No. 8:10–cv–1642–RMG–JDA, 2011 WL 2581453, at *8-9 (D.S.C. June 10, 2011), adopted by 2011 WL 2580634, at *1 (D.S.C. June 28, 2011) (considering *pro se* claimant's medical evidence that could have been submitted to the Appeals Council as new evidence under sentence six).

[6] With regard to her alleged suicide attempt, claimant reported that she did not go to the hospital due to her fear that she would lose custody of her children. [Doc.

reported that her depression made her irritable and caused her to be unable to concentrate. [Id. at 5-6]. She also explained that she was in an abusive marriage for five years and that she was sexually abused by her stepbrother from age nine to twelve. [Id.]. Claimant explained that she had suffered from her depressive symptoms for at least two years, that she suffered from insomnia as a result, and that her symptoms escalated in August of 2009. [Id. at 4-5]. Claimant also reported that she was enrolled in classes online at the University of Phoenix in an effort to obtain her Bachelor's degree, but that her last date of employment was sometime in 2009 and that she was unable to work due to her medical issues. [Doc. 7-1 at 1-2].

A mental status examination of claimant was performed and she was noted as being appropriately groomed; overweight; of average intelligence; cooperative; oriented to time, place, person, and situation; and with an appropriate affect, normal speech and thought, normal behavior, and with good insight and memory. [Id. at

---

7 at 5]. She explained that she did go to a medical clinic for a follow-up with a physician, but that she did not inform him of her suicide attempt. [Id.]. However, there are no medical records before the Court with regard to this time period. See generally [Doc. 12]. In fact, claimant reported that she had been receiving counseling from November of 2009 through February of 2010 from Jireh Counseling, [Doc. 7 at 5]; however, these records are not a part of the eCAR and have not been submitted to the Court for consideration as new evidence, and "[i]solated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment," Barrett v. Astrue, 340 F. App'x 481, 487 (10th Cir. 2009) (unpublished) (alteration in original) (citation and internal marks omitted).

4].  The initial diagnostic impressions from this assessment were Axis I: major

depressive disorder; Axis II: deferred; Axis III: diabetes, high blood pressure,

vertigo, and circulatory issues; Axis IV: problems with primary support group as

well as other psychosocial and environmental issues; and Axis V: a current Global

Assessment Functioning ("GAF") Scale Score of 50.[7]  [Id. at 6].  Based on this

---

[7] "The DSM-IV uses a 'multiaxial system,' which 'facilitates comprehensive and systematic evaluation with attention to the various mental disorders and general medical conditions, psychosocial and environmental problems, and level of functioning that might be overlooked if the focus were on assessing a single presenting problem.'" Jackson ex rel. K.J. v. Astrue, 734 F. Supp. 2d 1343, 1348 n.5 (N.D. Ga. 2010), adopted at 1345 (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 27 (4th ed. Text Revision 2000)).  "First, Axis I is for reporting all the various disorders or conditions in the Classification except for the Personality Disorders and Mental Retardation (which are reported on Axis II)." Id. (citation and internal marks omitted).  "Axis II is for reporting Personality Disorders and Mental Retardation.  It may also be used for noting prominent maladaptive personality features and defense mechanisms." Id. (citation and internal marks omitted).  "Axis III is for reporting current general medical conditions that are potentially relevant to the understanding or management of the individual's mental disorder," and "Axis IV is for reporting psychosocial and environmental problems that may affect the diagnosis, treatment, and prognosis of mental disorders (Axes I and II)." Id. (citation and internal marks omitted).  The GAF rating scale, the fifth axis, assesses how well the individual is able to function in his environment and considers psychological, social, and occupational functioning on a continuum ranging from 0-100 according to the severity of the mental illness. Farrington v. Astrue, No. 3:09-CV-94-J-TEM, 2010 WL 1252684, at *11 n.9 (M.D. Fla. Mar. 29, 2010).  An individual with a score ranging from 0-10 is deemed to be a persistent danger of hurting himself and cannot maintain standard self-care, while an individual with a score from 91-100 is deemed to be happy, healthy, and content. Riddles v. Astrue, No. 5:09cv388/RS/MD, 2010 WL 5071320, at *4 (N.D. Fla. Nov. 3, 2010), adopted by 2010 WL 5067972, at *1 (N.D. Fla. Dec. 7, 2010).  "A GAF score of 41-50 describes serious symptoms and includes serious impairment in the social, occupational or school functioning." Farrington, 2010 WL

assessment, it was recommended that claimant "receive CORE services-therapy," which "should include education on depression, the symptoms of depression, strategies to best assist her and the family in dealing with the symptoms and to stabilize her mood." [Id. at 7-8].

On July 7, 2010, claimant presented to Apex Behavioral Associates ("Apex"), for treatment of her depression. [Doc. 7-2 at 6-8; Doc. 7-3 at 1-2]. During her psychiatric evaluation, claimant reported that she had attempted suicide in August, 2009, and that she has suicidal thoughts on an intermittent basis. [Doc. 7-2 at 6, 8]. She also reported that she was sexually molested as a child by her mother's boyfriend as opposed to her stepbrother as she had reported before, that she was divorced with three children, that both of her parents were addicts, and that she has a sister who is bipolar. [Id. at 8]. Upon examination, it was noted that claimant appeared alert, obese, hyperactive with a poor ability to delay gratification, overtly friendly with direct eye contact, loud and with talkative speech, in a dysphoric mood, with an irritable affect, had repetitive thought processes and poor impulse control, but had good memory, concentration, and insight. [Doc. 7-3 at 1].

At this time, claimant's diagnostic impressions were: Axis I: bipolar disorder I with mixed psychiatric features, rule out schizoaffective disorder; Axis II: cluster

---

1252684, at *11 n.9 (citation and internal marks omitted).

B traits; Axis III: obesity, type 2 diabetes mellitus, hypertension; Axis IV: relocation and single motherhood; and Axis V: a GAF Scale Score of 45. [Id. at 2]. Claimant's prognosis was rated as fair. [Id.]. It was recommended that claimant undergo supportive therapy, psychoeducation, and medication education, and she was prescribed Tegretol and Wellbutrin. [Doc. 7-2 at 5].

On August 19, 2010, claimant returned to Apex for a follow-up visit at which time she reported that the Tegretol appeared to help at first but that she began experiencing manic urges in the last two weeks. [Id. at 4]. She reported that she had been sleeping and eating well and she denied having any hallucinations or delusions. [Id.]. A mental status examination was performed and claimant appeared alert, calm, cooperative, and friendly; her affect was eurythmic; her speech was spontaneous and coherent; she was oriented in three spheres; and her thought content was perplexed with a rambling thought process. [Id.]. The impression at this time was that claimant was hypomanic and her medications were adjusted with instructions that she continue with supportive psychotherapy. [Id.].

## C.     Evidentiary Hearing

### 1.     *Claimant's Testimony*

At the hearing on November 12, 2008, claimant appeared with Tara Goza, a non-attorney representative, and testified that she lived in a town house with her

three biological children and one custodial child, all of whom were minors. (Tr. at 9, 20, 22, 28). She testified that she had graduated from high school and obtained an associate's degree in business management. (Tr. at 27). Claimant further testified that she last worked for Target in a part-time floor sales position for a little over two weeks in September of 2008, but that she had to stop due to pain in her right knee and calf muscle. (Tr. at 23-24). Claimant also testified that prior to working at Target, she had worked at a grocery store for approximately eight months and that prior to that job, she worked as a payroll clerk for three years and at a Subway restaurant for about five to six years. (Tr. at 26-27).

Claimant testified that on a good day, her pain level was between a seven and eight. (Tr. at 26). As for her daily routine, claimant testified that she would normally wake up and test her blood sugar. (Tr. at 29). She stated that if her blood sugar was too low, she would spend most of the morning trying to elevate it. (Id.). Claimant testified that if it was a good day, she would help her 8-year-old child get ready for school, take her medications, eat breakfast, and perform some household chores such as cleaning her room and doing laundry. (Id.).

Claimant also testified that she felt like her physical impairments were affecting her mentally and that she suffered from depression, though she had never taken any antidepressant medications. (Tr. at 29-30). She also explained that she

saw a psychiatrist once, but that she did not feel comfortable with that person so she was trying to find another therapist. (Id.). As for her concentration and memory, claimant testified that she had to be reminded to take her medications, which included three medications for her diabetes, one medication for the inflammation in her leg, one medication for her high blood pressure, Vicodin for pain, Ibuprofen for swelling, and Antivert for her vertigo. (Tr. at 24-25, 30). With regard to side effects from these medications, claimant testified that some of them caused her to suffer from chronic diarrhea and that it was very hard to function on the Vicodin. (Tr. at 25). Claimant also stated that the medications made her dizzy and caused her to have headaches, leg pain, stomach pain, and frequent urination. (Id.).

### 2. *Witness Testimony*

Cory Millhouse ("Millhouse") testified on behalf of the claimant at the evidentiary hearing. (Tr. at 20, 30). He stated that he has known claimant for about one year and that he helps claimant around the house, with the children, reminds her to take her medications, and helps with "things she can't do." (Tr. at 31).

### D. <u>ALJ and Appeals Council</u>

### 1. *Findings of the ALJ*

By decision dated December 18, 2009, the ALJ denied claimant's applications for DIB and SSI benefits. (Tr. at 6-15). Specifically, the ALJ made the following

findings of fact:

1. The claimant meets the insured status requirements of [the Act] through September 30, 2008.

2. The claimant has not engaged in substantial gainful activity since August 27, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hypertension; diabetes mellitus; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).

6. The claimant is capable of performing past relevant work as a Payroll Clerk. This work does not require the performance of work-related activities precluded by the claimant's [RFC] (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in [the Act], from August 27, 2005 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. at 11-15).

### 2. *Appeals Council Decision*

Claimant requested a review of the ALJ's hearing decision, and although her request was untimely, the Appeals Council found that there was a good reason for

the delay. (Tr. at 1, 4-5). However, on June 24, 2010, the Appeals Council denied claimant's request for review, thereby making the ALJ's December 18, 2009, decision the final decision of the Commissioner. (Tr. at 1-3).

## IV.  STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see also Majkut v. Comm'r of Soc. Sec., 394 F. App'x 660, 662 (11th Cir. 2010) (per curiam) (unpublished). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D); D'Andrea v. Comm'r of Soc. Sec. Admin., 389 F. App'x 944, 946 (11th Cir. 2010) (per curiam) (unpublished).

"The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner." Gibson v. Astrue, Civil Action File No. 1:09-CV-677-AJB, 2010 WL 3655857, at *7 (N.D. Ga. Sept. 13, 2010). "The claimant bears the primary burden of establishing the existence of a 'disability' and therefore entitlement to disability benefits." Id. (citing 20 C.F.R. § 404.1512(a)); see also 20 C.F.R. § 416.912(a); Symonds v. Astrue, No. 10–12265, 2011 WL 5138598, at *1 (11th Cir. Oct. 31, 2011) (per curiam) (unpublished). The Commissioner utilizes a five-step sequential analysis to determine whether the claimant has met the burden of proving disability. See Manzo v. Comm'r of Soc. Sec., 408 F. App'x 265, 266 (11th Cir. 2011) (per curiam) (unpublished); Brooks v. Barnhart, 133 F. App'x 669, 670 (11th Cir. 2005) (per curiam) (unpublished); Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant must prove at step one that she is not undertaking substantial gainful activity. See Manzo, 408 F. App'x at 266; 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments which significantly limits her ability to perform basic work-related activities. See Manzo, 408 F. App'x at 266; 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets

one of the listed impairments in Appendix 1 to Subpart P of Part 404 [Listing of Impairments], the claimant will be considered disabled without consideration of age, education and work experience. See Salazar v. Comm'r of Soc. Sec., 372 F. App'x 64, 66 (11th Cir. 2010) (per curiam) (unpublished); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, she must prove that the impairment prevents performance of past relevant work. See D'Andrea, 389 F. App'x at 945; 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the Regulations direct the Commissioner to consider the claimant's RFC, age, education and past work experience to determine whether the claimant can perform other work besides past relevant work. See Manzo, 408 F. App'x at 267; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).[8] The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. In

---

[8] As explained by Doughty, the temporary shifting of the burden at step five to the Commissioner is a creature of judicial gloss on the Social Security Act and not mandated by the statutes. 245 F.3d at 1278 n.2; see also Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam) (citation omitted) ("Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do."). "Until step five is reached, the burden is on the claimant to introduce evidence in support of her application for benefits." Salazar, 372 F. App'x at 66 (citation omitted).

order to be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. Doughty, 245 F.3d at 1278 n.2.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Despite the shifting of burdens at step five, the overall burden rests upon the claimant to prove that she is unable to engage in any substantial gainful activity that exists in the national economy. Doughty, 245 F.3d at 1278 & n.2.

## V. SCOPE OF JUDICIAL REVIEW

The scope of judicial review of a denial of Social Security benefits by the Commissioner is limited. Lynch v. Astrue, 358 F. App'x 83, 86 (11th Cir. 2009) (per curiam) (unpublished). "Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues." Russell v. Astrue, 742 F. Supp. 2d 1355, 1367 (N.D. Ga. 2010) (citing Fields v. Harris, 498 F. Supp. 478, 488 (N.D. Ga. 1980)). "This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner." Id.; see also Lynch, 358 F. App'x at 86; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); Phillips v.

<u>Barnhart</u>, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).  If supported by substantial evidence and proper legal standards were applied, the findings of the Commissioner are conclusive.  <u>Dyer</u>, 395 F.3d at 1210; <u>Phillips</u>, 357 F.3d at 1240 n.8; <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439 (11th Cir. 1997) (citations omitted); <u>Graham v. Apfel</u>, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) (<u>quoting</u> 42 U.S.C. § 405(g)); <u>Foote</u>, 67 F.3d at 1560 (<u>citing</u> 42 U.S.C. § 405(g)); <u>Smith v. Bowen</u>, 792 F.2d 1547, 1549 (11th Cir. 1986).

"Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Somogy v. Comm'r of Soc. Sec.</u>, 366 F. App'x 56, 62 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted); <u>see also</u> <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (<u>quoting</u> <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (Substantial evidence has been defined as "'more than a scintilla, but less than a preponderance.'")).  In considering the evidence in the record, this Court must consider the record as a whole.  <u>Lynch</u>, 358 F. App'x at 86.  It may not affirm the Commissioner's decision by referring only to those parts of the record which support the same conclusion.  <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam).  That is, "the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and

disregards other contrary evidence is not based upon substantial evidence." <u>Wooten v. Astrue</u>, No. CV 309-023, 2010 WL 2521047, at *2 (S.D. Ga. May 26, 2010), adopted by 2010 WL 2521045, at *1 (S.D. Ga. June 21, 2010) (citation omitted). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951).

However, if the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the evidence preponderates against the Commissioner's decision. <u>Dyer</u>, 395 F.3d at 1210 (citation omitted); <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam); <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam); <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam); <u>Walker v. Astrue</u>, No. CV610–080, 2011 WL 5149640, at *1 (S.D. Ga. Oct. 27, 2011), adopted by 2011 WL 5527811, at *1 (S.D. Ga. Nov. 14, 2011). "In contrast, review of the ALJ's application of legal principles is plenary." <u>Bailey v. Astrue</u>, 739 F. Supp. 2d 1365, 1376 (N.D. Ga. 2010) (<u>citing</u> <u>Foote</u>, 67 F.3d at 1558; <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam)).

## VI. <u>ANALYSIS OF CASE</u>

Claimant asserts that the ALJ's decision is not supported by substantial evidence and should be reversed because the ALJ erred at step four of the sequential

analysis in finding that she retained the RFC to perform her past relevant work as a payroll clerk in that he failed to consider the combined effects of all of her physical and mental impairments and failed to consider the side effects of her medications. [Doc. 15]. Claimant also contends that the ALJ improperly evaluated her credibility and the credibility of Millhouse. [Id. at 3-4]. Finally, claimant asserts that new evidence shows that she suffers from a severe mental impairment and is disabled, and therefore warrants a remand for benefits. [Id. at 1-5]. For the following reasons, the Court rejects these arguments and finds that the ALJ's decision is supported by substantial evidence and that a remand is not warranted in this case.

**A.      The ALJ's finding that claimant retained the RFC to perform her past relevant work as a payroll clerk is supported by substantial evidence**

The ALJ found that claimant had the RFC to perform the full range of medium work without limitation, and that she could therefore perform her past relevant work as a payroll clerk. (Tr. at 12, 15). Claimant contends that the ALJ's RFC assessment is improper, arguing that "[i]t has been proven that there are health impairments that have plagued [her] body," and that the "diseases, the side effects of the medicines, and the symptoms associated with the diseases have caused [her] to be disabled according to [the Act]." [Doc. 15 at 3]. Claimant also contends that while she "may not be able to pinpoint one disability and argue that this is what makes her disabled . . . there are several disabilities that when combined together

gives [sic] her more than enough contributing factors to support her claim." [Id. at 4-5]. The Court finds, however, that substantial evidence supports the ALJ's ultimate determination that claimant could return to her past relevant work as a payroll clerk. Lewis, 125 F.3d at 1439 (citations omitted) ("We will not disturb the Commissioner's decision if, in light of the record as a whole, it appears to be supported by substantial evidence.").

After reviewing the entire medical record and finding claimant's hypertension, diabetes mellitus, and obesity to be severe impairments, the ALJ then noted that while these impairments "could reasonably be expected to cause the alleged symptoms," the "medical evidence of record does not support the severity of the pain and swelling and frequency of other symptoms, including dizziness, which the claimant has alleged." (Tr. at 11, 13). Specifically, the ALJ noted that in February of 2006, claimant reported being able to walk for 50 minutes daily and that she had no issues that would prevent her from being able to exercise. (Tr. at 14 (citing Tr. at 175-76, 178)). He also noted that in February of 2007, claimant reported "'no major complaints.'" (Id. (citing Tr. at 188)). The ALJ further noted as follows:

> The record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision.[9] The [RFC]

---

[9] "The Regulations establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion." Belge v.

conclusions reached by the physician employed by the State [DDS] also supports a finding of not disabled (Exhibit 8F). Although that physician was non-examining, and therefore, her opinions do not as a general matter deserve as much weight as those of treating or examining physicians, her opinions do deserve some weight, particularly in a case like this where there exist a number of other reasons to reach similar conclusions.

(Tr. at 14) (footnote added) (internal marks omitted). Indeed, while no treating or examining source completed an opinion regarding claimant's work-related limitations, Dr. Wunsch, a DDS non-examining physician, completed a PRFC assessment of claimant on June 19, 2008, which is the only PRFC assessment in the record, and found that based on claimant's obesity, hypertension, and diabetes,

---

Astrue, No. 3:09-cv-529-J-JRK, 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010) (footnote omitted). An opinion of a treating source "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis, 125 F.3d at 1440 (citations omitted); see also Miller v. Comm'r of Soc. Sec. Admin., 279 F. App'x 792, 792 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted); Burroughs v. Massanari, 156 F. Supp. 2d 1350, 1365 (N.D. Ga. 2001), adopted at 1353; 20 C.F.R. § 404.1527(d). Additionally, "the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." See Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) (citation and internal marks omitted); Driver v. Astrue, Civil Action File No. 1:07-CV-3014-AJB, 2009 WL 631221, at *19 (N.D. Ga. Mar. 9, 2009). Indeed, "[t]he opinions of nonexamining, reviewing physicians, . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam) (citation omitted); see also Kemp v. Astrue, 308 F. App'x 423, 427 (11th Cir. 2009) (per curiam) (unpublished); Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam) (citation and internal marks omitted) ("We accord little weight to the opinion of a reviewing physician if it is contrary to the opinion of the only physician to examine the patient."); Driver, 2009 WL 631221, at *19.

claimant could sit, stand, and walk for 6 hours in an 8-hour workday, lift or carry 50 pounds occasionally and 25 pounds frequently, and push and pull without limits. (Tr. at 227-28, 232, 234). Thus, Dr. Wunsch limited claimant to medium work.[10] (Id.). Additionally, on June 10, 2008, Dr. O'Neil, a DDS non-examining psychological consultant, completed a PRT form for claimant and found that claimant had no medically determinable mental impairment. (Tr. at 213-26). Specifically, Dr. O'Neil noted that the medical evidence of record had no findings or mention of any mental issues, and that claimant's activities of daily living were likewise focused on physical and not mental issues. (Tr. at 225). Finally, Phillips completed a Vocational Analysis for claimant in which he found claimant capable of performing medium exertional work with no mental limitations, which included claimant's past work as a payroll clerk. (Tr. at 149-51).

At step four of the sequential evaluation process, the claimant bears the burden of proving the inability to perform her previous relevant work. Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990); see also Klawinski v. Comm'r of Soc. Sec., 391 F. App'x 772, 775 (11th Cir. 2010) (per curiam) (unpublished); Waldrop v. Comm'r of Soc. Sec., 379 F. App'x 948, 953 (11th Cir. 2010) (per curiam)

_____

[10] Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

(unpublished). If claimant can perform the duties of any of her past jobs as they are performed in the economy, then she is not disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920, 416.960; see also Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986) (per curiam). "When reviewing administrative decisions to determine if they are supported by substantial evidence this court examines the entire record but defers to the agency's factual determinations as long as there is relevant evidence that supports the finding as reasonable." Kelliher v. Veneman, 313 F.3d 1270, 1277 (11th Cir. 2002) (citations omitted). "This deferential standard of review means that as long as the conclusion is reasonable, [the Court] defer[s] to the agency's findings of fact even if [the Court] could have justifiably found differently." Id. (citations omitted). The Court does not "re-weigh or re-examine the credibility choices made by the fact finder." Id. (citation omitted).

Claimant argues that the ALJ's RFC determination is not supported by substantial evidence because he failed to consider all of her impairments, including the effects of her medications, in combination when assessing her RFC. [Doc. 15 at 4-5]. When determining a claimant's RFC,

> the ALJ must consider the combined effects of a claimant's impairments in determining whether she is disabled. When a claimant has alleged a multitude of impairments, a claim for social security benefits may lie even though none of the impairments, considered individually, is disabling. Furthermore, it is the duty of the ALJ to make specific and well-articulated

findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Walker, 826 F.2d at 1001 (citations and internal marks omitted); see also Stanley v. Astrue, 386 F. App'x 918, 919 (11th Cir. 2010) (per curiam) (unpublished) (citation and internal marks omitted) ("[RFC] is determined by considering cumulatively all the relevant medical and other evidence."); Jones v. Dept. of Health & Hum. Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (per curiam) (footnote omitted) ("Where a claimant has alleged several impairments, the Secretary has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled."); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (per curiam) (requiring remand where "the ALJ improperly discounted [claimant's] subjective complaints of pain and dizziness, [therefore] he did not give adequate consideration to the effect the combination of her exertional and non-exertional impairments"); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986) (requiring remand where ALJ failed to consider whether claimant's claimed impairments of psoriasis, nervousness, anxiety, dizziness, and forgetfulness "were sufficiently severe-either singularly or in combination-to create a disability"); Social Security Ruling ("SSR")[11] 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (recognizing

---

[11] SSRs "'are binding on all components of the [SSA].'" Brewer v. Astrue, No. 8:09-CV-132-T-27TGW, 2010 WL 454916, at *1 n.1 (M.D. Fla. Feb. 9, 2010) (quoting 20 C.F.R. § 402.35(b)(1) & Sullivan v. Zebley, 493 U.S. 521, 530 n.9 (1990)). "Although

that non-severe impairments, when considered together with limitations and restrictions due to other impairments, may be critical to the outcome of the claim). The ALJ is required to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments are disabling.  Walker, 826 F.2d at 1001.

In steps two and three of the sequential analysis, the ALJ found that, through the date last insured, claimant had the severe impairments of hypertension, diabetes mellitus, and obesity, which affected claimant's ability to function, however, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. at 11-12).[12]  Additionally, at step four, in assessing claimant's RFC,

_____

SSRs do not have the force of law, they are entitled to deference if consistent with [the Act] and regulations."  Id. (citation omitted).

[12] This statement alone is evidence that the ALJ did in fact consider all of claimant's impairments discussed in combination.  See Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (per curiam); Jones, 941 F.2d at 1533 (emphasis omitted) (finding that the ALJ's statement that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" was sufficient to meet the requirement that the ALJ consider the combined effect of claimant's impairments).  To the extent claimant argues that that ALJ erred at step two in failing to find her depression, right knee pain, and vertigo were severe impairments, see (Tr. at 12), any alleged error in this regard is harmless since the ALJ continued on to the next step in the sequential analysis and ultimately made a decision at step four based on claimant's RFC to perform her past relevant work.  Simmons v. Comm'r of Soc. Sec., No. 6:08-cv-1407-Orl-DAB, 2009 WL 2973622, at *3 (M.D. Fla. Sept. 14, 2009).  Indeed, "a

the ALJ stated that he "considered all symptoms and the extent to which these

---

continued analysis in the sequential step evaluation process can infer failure to articulate a finding at an earlier step was harmless error." Farrington, 2010 WL 1252684, at *4 (citation omitted); see also Jackson, 734 F. Supp. 2d at 1361; Glover v. Astrue, Civil Action No. 2:07CV977-SRW, 2009 WL 1456688, at *3 (M.D. Ala. May 22, 2009). Moreover, the ALJ's decision in this regard is clearly supported by substantial evidence that claimant did not have a severe mental impairment as the treatment records fail to indicate any clinical signs of an ongoing mental disorder, any treatment for a mental disorder, or that she took any medications for any mental impairments, and the record, as discussed by the ALJ, provides substantial evidence that any alleged mental condition did not interfere with her ability to perform basic work activities. See Sykes v. Apfel, No. Civ.A.99–0983–P–L, 2001 WL 102986, at *14 (S.D. Ala. Jan. 30, 2001), adopted in part at *3 (finding substantial evidence supported ALJ's decision that claimant did not suffer from severe mental impairment where, among other things, there was no opinion regarding a severe mental impairment from a treating physician). In fact, even claimant reported that her impairments affected her body and the physical aspects of her life and not her mind, (Tr. at 148), and the medical evidence before the Court shows that claimant's treatment records during the relevant time period failed to reference any complaint of depression, but repeatedly noted that claimant handled stress well, was coping well with her life, was friendly and pleasant, and had an appropriate affect, (Tr. at 168, 175-76, 178-79, 188, 196, 198-204, 206-07, 209-10, 242-43), all of which was considered by Dr. O'Neil, who found that claimant had no medically determinable mental impairment, (Tr. at 213-26). Furthermore, the ALJ's discussion and RFC finding indicate that he did not find that claimant's mental limitations would affect her RFC. See Trimble v. Astrue, No. 08-3376-CV-GAFSSA, 2009 WL 3247311, at *4-5 (W.D. Mo. Oct. 6, 2009) (RFC finding that claimant could perform medium work and frequently climb, balance, kneel, crouch, crawl, and stoop was based on substantial evidence where ALJ stated that "he was required to consider all of [claimant's] impairments, including non-severe impairments," and "specifically discussed the evidence of record regarding [claimant's] alleged depression," which he found was non-severe); Hall v. Astrue, No. 3:07-cv-1053-J-JRK, 2009 WL 890389, at *12 (M.D. Fla. Mar. 31, 2009) ("It being clear that the ALJ took into account [claimant's] claimed mental impairment when assessing his RFC (by his specific finding of 'no limitations of mental functioning'), and in the absence of claimant pointing to specific evidence contradicting that finding, the undersigned finds that the ALJ properly assessed [claimant's] RFC.").

symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. at 13). He further noted that "whenever statements about the intensity, persistence, and limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [he] must make a finding on the credibility of the statements based on a consideration of the entire case record," and he then went on to discuss with specificity the effects of claimant's hypertension, diabetes, and obesity, including her reports of "significant swelling of the bilateral lower extremities, daily dizziness and lightheadedness, significant bone and joint pain, fatigue, and side effects of medications," on her RFC. (Id.). As previously discussed, the ALJ used Dr. Wunsch's PRFC assessment and Dr. O'Neil's PRT form assessment, which included references to all of the above conditions, to conclude that claimant was capable of a full range of medium work without limitation, and there is no medical evidence from a treating or examining source to the contrary. (Tr. at 12-14).[13]

---

[13] Indeed, the only limitation in the record from a treating or examining source is the September 25, 2008, recommendation from Dr. Natarajan, a one-time examining source, that based on his diagnosis of an acute gastrosoleus strain of claimant's right leg, that she take a few days off from work, keep her leg elevated, take warm baths, wear a soft shoe, and then return to work for six hours a day for a week before resuming her normal schedule. (Tr. at 239-40). Thus, Dr. Natarajan's opinion further supports the ALJ's decision that claimant was capable of returning to work and not disabled.

Not only did the ALJ write that he had considered all of claimant's alleged impairments, the ALJ's assessment of claimant's degree of impairment at both steps three and four of the sequential analysis show that all of claimant's limitations, whether severe or not, actually were considered in combination in arriving at a conclusion that claimant was not disabled. Cf. Stanley, 386 F. App'x at 920; Russell v. Astrue, 331 F. App'x 678, 680-81 (11th Cir. 2009) (per curiam) (unpublished) (internal marks omitted) (No reversible error where "[t]he ALJ acknowledged these [non-severe] impairments, but concluded that the combined effect and combination of [the] impairments do not significantly limit her ability to perform basic work-related activities. . . . the ALJ did not fail to consider or ignore [claimant's] shoulder and neck pain; he simply found that they did not cause disability"). Thus, the record reflects that the ALJ properly considered the combined effect of claimant's impairments in evaluating her RFC.

Claimant also argues that the ALJ failed to consider the side effects of her medications. [Doc. 15 at 2]. "An ALJ has a duty to investigate the possible side-effects of medications taken by a claimant." Lipscomb v. Comm'r of Soc. Sec., 199 F. App'x 903, 906 (11th Cir. 2006) (per curiam) (unpublished) (citing Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981)). Here, with regard to claimant's medications, the ALJ stated:

> Although the claimant has alleged various significant and disabling side effects from the use of medications, including headaches and diarrhea, the medical records do not corroborate those allegations as there are very few complaints of such to her treating physicians. In fact, there is no indication that the complaints of headaches were a result of her medication regimen at all. She has been evaluated for a headache and dizziness once in February 2008, but CT scans of the head were normal.

(Tr. at 14) (internal citations omitted). In fact, the only evidence presented of side effects came from claimant and claimant's sister. (Tr. at 25, 123-30, 148).

Contrary to claimant's argument, the ALJ did not fail to consider the side effects of claimant's medications, but rather he considered them, and did not find them (either alone or in conjunction with other impairments) to be disabling to the extent that claimant would be unable to perform a full range of medium work. (Tr. at 14); see Swindle, 914 F.2d at 226 (finding that "[t]he ALJ's determination that side effects from medication did not present a significant problem is therefore supported by substantial evidence" where "the record did not disclose any concerns about side effects by the several doctors who examined and treated [claimant]"); Ford v. Barnhart, Civil Action No. 06-0220, 2006 WL 3589046, at *3 (E.D. Pa. Dec. 8, 2006) (citation omitted) ("Although drowsiness is often a side effect of medication, an ALJ's decision to discount such an allegation and not include a related limitation in the RFC is supported by substantial evidence if the record does not reflect serious functional limitations resulting from the drowsiness"); Holley v. Chater, 931 F. Supp.

840, 850 (S.D. Fla. 1996), adopted at 843 (finding evidence insufficient to support finding of disability where only evidence as to side effects was claimant's testimony that medications made her drowsy and dizzy). In fact, the ALJ properly considered whether the medical record corroborated claimant's allegations concerning the side effects of her medications, and determined that it did not based on the fact that claimant made very few complaints to her treating physicians. See Miranda v. Comm'r of Soc. Sec., No. 10–11204, 2011 WL 5840255, at *2 (11th Cir. Nov. 21, 2011) (per curiam) (unpublished); Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 938 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted) ("[A] claimant's failure to report side effects to [her] physicians is an appropriate factor for the ALJ to consider in evaluating whether a claimant's alleged symptoms are consistent with the record."). Thus, the ALJ did not err in this regard and his conclusion regarding the functional limitations raised by the side effects of claimant's medications is supported by substantial evidence. Accordingly, given the medical record evidence, the Court finds that the ALJ's decision that claimant retained the RFC to perform her past relevant work as a payroll clerk and was therefore not disabled is supported by substantial evidence. See Crawford, 363 F.3d at 1158-59; see also Khawaja v. Shalala, 20 F.3d 1170, 1994 WL 144806, at *3-4 (5th Cir. 1994) (per curiam) (unpublished) (finding that substantial evidence supported ALJ's decision that claimant could

perform past relevant work where past relevant work was consistent with RFC limitations included in medical record); <u>Loar v. Astrue</u>, No. 2:10–cv–593–FtM–29SPC, 2011 WL 5357629, at *11-12 (M.D. Fla. Oct. 12, 2011), adopted by 2011 WL 5358670, at *1 (M.D. Fla. Nov. 7, 2011) (finding that "substantial evidence in the record that were discussed and considered by the ALJ, including medical records, [a consultative examination], and [claimant's] daily activities and work history, supports the ALJ's RFC finding that [claimant] could perform medium work," including her past relevant work as a fast food worker).

**B.**    <u>**The ALJ's credibility assessment is supported by substantial evidence**</u>

Claimant contends that all of her subjective complaints were supported by the evidence and that the ALJ erred by not finding her subjective complaints of pain as well as the testimony from Millhouse and her sister's Third-Party Adult Function Report to be fully credible.  [Doc. 15 at 3-4].  Testimony regarding claimant's pain and subjective limitations are evaluated under the standard set forth by the Eleventh Circuit in <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam):

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged [limitations]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed [limitations].

Wilson, 284 F.3d at 1225 (citing Holt, 921 F.2d at 1223). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." Id. at 1225 (citing Hale, 831 F.2d at 1011). "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." Id. (citing Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988)).

The ALJ's reasons for rejecting testimony regarding subjective symptoms must be supported by substantial evidence, and "where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing Walker, 826 F.2d at 1004); Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1380 (N.D. Ga. 2006). Factors considered when evaluating a claimant's subjective complaints of pain are set forth at 20 C.F.R. § 416.929(a), which provides in relevant part:

> (a) General. In determining whether [claimant is] disabled, we consider all [claimant's] symptoms, including pain, and the extent to which [claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence . . . . By other evidence, we mean the kinds of evidence described in §§ 416.912(b)(2) through (6) and 416.913(b)(1), (4), and (5) and (d). These include statements or reports from [claimant], [claimant's] treating or nontreating source, and others about [claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how [claimant's] impairment(s) and any related symptoms affect [claimant's] ability to work. . .

20 C.F.R. § 416.929(a); <u>see also</u> <u>Dyer</u>, 395 F.3d at 1212 (finding that ALJ "adequately explained his reasons" for discrediting claimant's pain testimony where "the ALJ considered [claimant's] activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that [claimant's] subjective complaints were inconsistent with his testimony and the medical record"); <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1068 (11th Cir. 1986) ("[T]he fact finder must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony."); <u>White v. Barnhart</u>, 340 F. Supp. 2d 1283, 1285 n.6 (N.D. Ala. 2004) (<u>quoting</u> SSR 96-07p, 1996 WL 374186, at *2 (July 2, 1996) ("'The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'")). "However, the above factors cannot alone establish that [claimant] is disabled; there must be objective medical evidence that demonstrates the existence of a medical impairment or impairments which could reasonably be expected to produce pain in the severity claimed by [claimant]." <u>White</u>, 2000 WL 724410, at *7.

The ALJ properly discredited claimant's pain testimony by acknowledging her alleged limitations, but finding that while "claimant's medically determinable

impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of the these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (Tr. at 13). The ALJ then explained in relevant part:

> In analyzing the credibility of the claimant's subjective complaints, the first factor considered involves her daily activities. The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She has indicated that she has good days and bad days; nevertheless, she has reported on February 24, 2006 and June 5, 2008, that she does not need any help with her activities of daily living. The claimant also is able to prepare meals for herself, children, and partner; clean; do laundry; vacuum; wash dishes; shop for toiletries, food, and clothing; attend church. The claimant is apparently able to care for three young children at home, which can be quite demanding physically (Exhibits 5E, 8E, and 1F).
>
> With respect to the location, duration, frequency, and intensity of the claimant's pain and other symptoms, the medical evidence of record does not support the severity of the pain and swelling and frequency of other symptoms, including dizziness, which the claimant has alleged. The claimant has not generally received the type of treatment one would expect for a totally disabled individual. Though she has alleged disabling pain, swelling, and dizziness, the record reveals infrequent trips to the doctor for the allegedly disabling symptoms. Infrequent trips to the doctor and rare complaints of pain and other symptoms contrast sharply with the current claims of ongoing, disabling symptoms since the alleged onset date.

(Tr. at 13-14).

In support of his credibility finding, the ALJ also cited the fact that claimant reported in February of 2006, that she could walk for 50 minutes per day and could

exercise and that in February of 2007, she reported no major complaints. (Tr. at 14);

see also Lanier v. Comm'r of Soc. Sec., 252 F. App'x 311, 314 (11th Cir. 2007) (per

curiam) (unpublished) (affirming ALJ's adverse credibility determination where

claimant's description of her activities was inconsistent with her testimony

regarding pain); Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996) (citations omitted)

("The ALJ may discount the claimant's allegations of pain when he explicitly finds

them inconsistent with daily activities, lack of treatment, demeanor, and objective

medical evidence."). The ALJ also considered claimant and her sister's statement

regarding the side effects of her medications, but found that these allegations were

not corroborated by the medical records. (Tr. at 13).[14] "The question is not . . .

whether [the] ALJ could have reasonably credited [claimant's] testimony, but

whether the ALJ was clearly wrong to discredit it." Werner, 421 F. App'x at 939. In

_____

[14] To the extent claimant contends that the ALJ failed to consider her sister's statement in the October 26, 2007, Third-Party Adult Function Report, [Doc. 15 at 3]; see also (Tr. at 123-30), this argument is without merit. In particular, the ALJ specifically referenced by exhibit number White's statement regarding claimant's daily activities and the side effects of claimant's medications in his decision, see (Tr. at 13-14), and explicitly provided reasons for discounting it, which for the reasons already stated, are supported by substantial evidence. Indeed, White's statement merely corroborated claimant's testimony regarding her complaints, and the ALJ, "having properly discredited claimant's subjective complaints, was equally empowered to reject the cumulative testimony of [her sister]." Dawdy v. Astrue, No. C10–4063–MWB, 2011 WL 5080146, at *23 (N.D. Iowa Oct. 25, 2011) (citations and internal marks omitted); see also Claude v. Astrue, No. 09-20478-CIV, 2010 WL 97779, at *7 (S.D. Fla. Jan. 11, 2010), adopted at *1.

the present case, the ALJ's credibility findings were both explicit and supported by citation to specific evidence that provided a reasonable basis for partially rejecting claimant's testimony. Dyer, 395 F.3d at 1212; Wilson, 284 F.3d at 1226; Veasey v. Astrue, Civil Action No. 1:06-CV-1909-AJB, 2008 WL 504388, at *9-10 (N.D. Ga. Feb. 21, 2008). The ALJ therefore committed no error in finding that claimant was not entirely credible as to her allegations of pain and functional limitations, and "substantial evidence cited by the ALJ supports the adverse credibility determination." Werner, 421 F. App'x at 939; see also Levy v. Astrue, No. 07-80157-CIV, 2008 WL 4753518, at *22 (S.D. Fla. Oct. 28, 2008), adopted at *1.

Claimant also takes issue with the ALJ's finding that Millhouse was less than fully credible. [Doc. 15 at 3-4]. Although Millhouse vaguely testified that he had known claimant for about one year and that he helped her around the house with "things that she can't do," cooked for her children, and that he reminded her to take her medications, (Tr. at 30-31), he did not provide any testimony concerning the nature or severity of claimant's impairments or her functional capacity. Thus, the ALJ properly rejected his testimony as unreliable and not consistent with the preponderance of the medical evidence. See (Tr. at 14); see also Ostronski v. Chater, 94 F.3d 413, 419 (8th Cir. 1996) (citation omitted) (finding that, because (1) claimant's mother, sister, and husband were not qualified to render an opinion as to claimant's

capacity to work; (2) their statements merely corroborated claimant's testimony regarding her activities; and (3) testimony conflicted with the medical evidence of record regarding claimant's functional limitations, the ALJ "had a solid basis for discounting [claimant's] lay witness testimony"); Watson v. Astrue, No. EDCV 07-1502-JTL, 2008 WL 4793679, at *4 (C.D. Cal. Oct. 30, 2008) (upholding ALJ's rejection of claimant's father's testimony where his testimony regarding the severity of claimant's impairments, his daily routine, and functional capacity was vague and insignificant and merely echoed claimant's own testimony); Hammond v. Astrue, No. CIV 07-00264 PHX MEA, 2008 WL 276360, at *26 (D. Ariz. Jan. 29, 2008) (citation omitted) ("An ALJ may discount lay witness testimony . . . if it conflicts with medical evidence."). Thus, this claim is likewise without merit, and the Court finds that the ALJ's credibility assessment is supported by substantial evidence.

**C.** **Remand is not warranted under sentence six of 42 U.S.C. § 405(g) based on claimant's new medical evidence**

Claimant argues that remand under sentence six of 42 U.S.C. § 405(g) is warranted for the Commissioner's consideration of new evidence, which includes an initial assessment from FUS dated March 5, 2010, and psychiatric progress notes from Apex dated July 7, 2010, and August 19, 2010. [Doc. 7 at 4-8; Doc. 7-1 at 1-8; Doc. 7-2 at 1-8; Doc. 7-3 at 1-2]. Specifically, claimant contends in relevant part:

> Although on an online correspondence on June 5, 2008, the plaintiff
> stated that she did not feel her disability affected her mind, she has
> learned otherwise. Since her diagnosis of bipolar depression, she has
> learned that her diseases have taken a huge toll on her depressive state.
> The plaintiff only testified to what she felt at that time. The plaintiff
> did not quote a mental health professional. Once the plaintiff sought
> help from a professional, she learned that her thought process on June
> 5, 2008 was incorrect.

[Doc. 15 at 4 ¶ 4]. Therefore, claimant argues that the "new medical findings that further support [her] disability claim should be entered into evidence for they have been ongoing and coincide with all the other ailments that were introduced during this process." [Id. at 1 ¶ 1].

Remands pursuant to sentence six of § 405(g) can be ordered in only two situations: where the Commissioner "requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." Shalala v. Schaefer, 509 U.S. 292, 297 n.2 (1993) (citations omitted). A remand for consideration of additional evidence is appropriate where a claimant shows that "'(1) there is new, noncumulative evidence;[15] (2) the evidence is 'material', that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there

---

[15] The requirement that evidence not be cumulative is satisfied by the production of new evidence that was not contained in the administrative record. Cannon, 858 F.2d at 1546.

is good cause for the failure to submit the evidence at the administrative level.'"[16]

Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001) (footnote added) (citation omitted) (quoting Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)); see also Brown v. Comm'r of Soc. Sec., 425 F. App'x 813, 818 (11th Cir. 2011) (per curiam) (unpublished); Leiter v. Comm'r of Soc. Sec. Admin., 377 F. App'x 944, 950 (11th Cir. 2010) (per curiam) (unpublished). The failure of a claimant to establish any one of these elements means that remand is not appropriate. See Milano, 809 F.2d at 766. Indeed, "Congress plainly intended that remands for good cause should be few and far between." Evangelista v. Sec. of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987) (citation omitted).

Claimant has failed to show that the new evidence regarding her mental impairments is material, i.e., that it could reasonably be expected to change the ALJ's decision. The March 5, 2010, assessment shows that claimant was diagnosed as suffering from major depressive disorder and rated a GAF score of 50, which indicates serious symptoms and serious impairments in the social, occupational, or school functioning. [Doc. 7-1 at 6]; see also Farrington, 2010 WL 1252684, at *11 n.9.

---

[16] The Eleventh Circuit has held that good cause exists if the evidence did not exist at the time of the administrative proceeding. Cannon, 858 F.2d at 1546. If the evidence did exist, good cause can still be shown in certain circumstances. See Milano v. Bowen, 809 F.2d 763, 767 (11th Cir. 1987); Campbell, 2011 WL 2581453, at *8-9.

Additionally, in July of 2010, claimant was diagnosed as suffering from bipolar disorder I with mixed psychiatric features and rated a GAF score of 45. [Doc. 7-3 at 2]. It was recommended that claimant undergo therapy and she was prescribed medications to help alleviate and manage her depressive symptoms. [Doc. 7-2 at 5]. On August 19, 2010, claimant was diagnosed as hypomanic and her medicinal regimen was changed with instructions that she continue with supportive psychotherapy. [Id. at 4]. This medical evidence, however, cannot reasonably be expected to change the ALJ's decision.

"For evidence to be new and noncumulative, it must relate to the time period on or before the date of the ALJ's decision." Leiter, 377 F. App'x at 950 (citation omitted); see also Archer v. Comm'r of Soc. Sec., 176 F. App'x 80, 82 (11th Cir. 2006) (per curiam) (unpublished). "Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit in a new application, but it is not probative of whether a person was disabled during the specific period under review." Leiter, 377 F. App'x at 950 (citation omitted). That is, "[a]n implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Austin v. Astrue, No. 5:07cv52/MCR/EMT, 2008 WL 2385520, at *16 (N.D. Fla. June

9, 2008), adopted at \*1 (citations and internal marks omitted); see also Dispaine v. Astrue, No. 1:10–CV–162, 2011 WL 4528868, at \*7 (E.D. Tenn. July 12, 2011), adopted by 2011 WL 4528867, at \*3 (E.D. Tenn. Sept. 28, 2011) (citation omitted) ("A subsequent deterioration or change in condition is not material; rather, if a claimant's condition seriously degenerates, the appropriate remedy would be to initiate a new claim for benefits as of the date the condition aggravated to the point of constituting a disabling impairment."). Therefore, a claimant fails to satisfy the materiality prong necessary for a remand where the new evidence reflects a deterioration of a condition after the period under adjudication. Id.

Here, the newly submitted evidence is dated months after the ALJ's decision of December 18, 2009, and well after September 30, 2008, claimant's date last insured.[17] See (Tr. at 6-15). In fact, the evidence submitted by claimant does not in

---

[17] Claimant met the disability insured status requirements of the Act through September 30, 2008, and she must therefore demonstrate the existence of an impairment that precluded her from performing substantial gainful activity for a continuous period of twelve months on or prior to September 30, 2008, her date last insured, to be entitled to a period of disability and DIB benefits. See (Tr. at 9, 11); Turner v. Astrue, No. 4:09–CV–116–CDL–MSH, 2011 WL 1930658, at \*2 (M.D. Ga. Apr. 4, 2011), adopted by 2011 WL 1930649, at \*1 (M.D. Ga. May 19, 2011) (citations omitted) ("To establish entitlement to disability insurance benefits under Title II of [the Act], a [c]laimant must be found to be disabled prior to the date of expiration of . . . her insured status."); Plum v. Astrue, No. 08-CV-6121-HU, 2009 WL 3627966, at \*19 (D. Or. Oct. 29, 2009), adopted at \*1 ("There is no objective evidence of depression from [claimant's] alleged onset date . . . to her last insured date . . . .There is no evidence that she suffered any limitations as a result of depression prior to that last insured date.").

any way contradict the ALJ's finding that she did not suffer from a "severe" mental

impairment prior to his December 18, 2009, decision denying benefits, and therefore

fails to establish a reasonable possibility that it would change the administrative

result.[18] See Gibbs v. Barnhart, 156 F. App'x 243, 247 (11th Cir. 2005) (per curiam)

(unpublished) ("Because evidence submitted to the [Appeals Council] concerned

[claimant's] condition after the ALJ's final decision, it was not material to the

---

[18] While the new evidence includes claimant's reports that she had been experiencing her depressive symptoms for the last two years, see [Doc. 7 at 4-5; Doc. 7-2 at 6], this evidence is inconsistent with the medical records from the relevant time period, see (Tr. at 168, 175-76, 178-79, 188, 196, 198-204, 206-07, 209-10, 213-26, 242-43 (repeated notations that claimant handled stress well, was coping well with her life, was friendly and pleasant, and had an appropriate affect and Dr. O'Neil's finding that claimant had no medically determinable mental impairment)). In fact, claimant even reported that her impairments affected her body and the physical aspects of her life and not her mind, (Tr. at 148), and she admits that she "testified to what she felt at that time," [Doc. 15 at 4 ¶ 4]. Furthermore, while the new evidence contains GAF scores of 50 in March 5, 2010, and 45 in July of 2010, see [Doc. 7-1 at 6; Doc. 7-3 at 2], "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in [the] mental disorders listing," and therefore, "the GAF score alone is not a grounds to establish severity, any more than a diagnosis, standing alone, establishes severity." Dispaine, 2011 WL 4528868, at *8 (second alteration in original) (citations and internal marks omitted); see also Garrison v. Astrue, No. 3:10–cv–417–J–JRK, 2011 WL 4552358, at *4 (M.D. Fla. Sept. 30, 2011) ("The undersigned recognizes that as a result of the Commissioner's refusal to endorse the GAF scale, and due to the subjectivity of the clinician's determination involved in assigning the GAF score, courts appropriately assign GAF scores limited weight in reviewing an ALJ's determination regarding a plaintiff's functional capacity."); Bruner v. Comm'r of Soc. Sec., No. 8:08-CV-1744-T-27GJK, 2009 WL 3052291, at *2 (M.D. Fla. Sept. 23, 2009) (citation and internal marks omitted) ("[A]n opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations.").

decision, and remand is not required."); <u>Freeman ex rel. Moye v. Astrue</u>, No. 5:09-CV-47 (CWH), 2010 WL 1416704, at *5 (M.D. Ga. Mar. 30, 2010) (finding that new evidence did not warrant remand under sentence six where it merely showed condition had worsened after the ALJ's decision, but that the deterioration would not be relevant to her condition on or prior to that decision); <u>see also</u> <u>Goff ex rel. Goff v. Comm'r of Soc. Sec.</u>, 253 F. App'x 918, 922 (11th Cir. 2007) (per curiam) (unpublished) (finding the recently submitted statement by a treating physician did not establish a reasonable possibility of changing the outcome where substantial evidence offered during the relevant time period supported ALJ's finding of no disability); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 685 (6th Cir. 1992) (citation omitted) ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial."); <u>Harkins v. Astrue</u>, Civil Action No. 10-174, 2011 WL 778403, at *1 n.1 (W.D. Pa. Mar. 1, 2011) (finding that remand was not warranted based on new evidence where records dated one month after the ALJ's decision did not expressly relate back to the relevant period). Thus, claimant has failed to meet her burden of showing that remand for this reason is proper.[19]

_____

[19] Given that this Court finds that the claimant has failed to establish that the "new evidence" is material, the Court need not address the good cause requirement. <u>See</u> <u>Goff</u>, 2007 WL 3379808, at *3. ("We need not reach the first and third prongs because [the claimant] fails to show a reasonable possibility that the new evidence

## VII.  CONCLUSION

For the reasons stated, it is hereby **RECOMMENDED** that the Commissioner's final decision denying claimant's applications for DIB and SSI be **AFFIRMED**.

The Clerk is hereby **DIRECTED** to terminate this reference.

**IT IS SO RECOMMENDED**, this 24th day of January, 2012.

*Russell G. Vineyard*

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

would change the administrative result.").